IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


Juliet Odisho              )
                           )
            Plaintiff,     )
                           )
      v.                   )    No. 16 C 11121
                           )
U.S. Bancorp, Inc.,        )
                           )
            Defendant.     )
                           )


MEMORANDUM OPINION AND ORDER

Juliet Odisho alleges that U.S. Bankcorp, Inc., ("US Bank")
subjected her to both discrimination and harassment because of
her race, national origin, religion, and age.[1] US Bank denies
these allegations and has moved for summary judgment. US Bank's
motion is denied in part and granted in part for the reasons
stated below.

I.

The following facts are presented in the light most
favorable to Odisho, the non-moving party, as permitted by the
record and Local Rule 56.1.[2] *See Hanners v. Trent,* 674 F.3d 683,

---

[1] Odisho also brought claims against US Bank and two of its
managerial employees for violations of various federal and state
labor statutes. These claims were dismissed pursuant to the
parties' stipulation. Dkt. No. 76.
[2] These facts are also drawn from my review of the record. The
parties' Local Rule 56.1 submissions incorporate legal argument,
evidentiary objections, and lengthy factual assertions, all of

1

691 (7th Cir. 2012). These facts are undisputed except where noted.

Odisho is female and is presently age 54. Def.'s Statement of Material Facts ("DSOF") at ¶ 1. She was born in Baghdad, Iraq, and moved to the United States in 1980 to flee persecution she suffered as a Christian. *Id.*; Pl.'s Statement of Material Facts ("PSOF") at ¶ 13. She considers her race to be Iraqi, which is Asian. DSOF at ¶ 51. US Bank records list her race as white. *Id.* at ¶ 52. From 1994 until 2011, Odisho worked as an analyst at Bank of America where she performed cash management work. DSOF at ¶ 10; Tenorio Aff. at ¶ 3. She has previously worked under "mean" bosses who yelled at employees, but that behavior caused her no issues. PSOF at ¶ 12. In 2011, US Bank acquired the group Odisho worked in, which then became responsible for handling structured finance deals. DSOF at ¶ 10. Odisho's official title at US Bank was Structured Finance Analyst on the Chicago Global Finance Operations team. *Id.* at ¶¶ 2, 9. As part of their transition to structured finance work, Odisho and other analysts in her group were required to become

which have needlessly complicated the task of ascertaining the existence or non-existence of undisputed material facts. As I have reminded litigants on several occasions, L.R. 56.1 is intended to facilitate the ascertainment of factual disputes, not a venue to present legal arguments or their spin on the facts. *See Samuels v. Schneider Nat'l Carriers*, No. 15 C 8468, 2018 WL 4590329, at *1 n. 1 (N.D. Ill. Sept. 25, 2018); *Grabianski v. Bally Total Fitness Holding Corp.*, 169 F. Supp. 3d 785, 788 (N.D. Ill. 2015) (collecting cases).

proficient in certain software US Bank used for structured finance deals. *Id*. at ¶ 11.

Odisho's supervisor at Bank of America, Raymond Tenorio, continued to supervise her and the structured finance team following US Bank's acquisition. Tenorio Aff. at ¶¶ 3-4, 6. Tenorio testified that during the time he supervised Odisho her performance met or exceeded expectations and was as good as or better than that of her colleagues, her 2011-2014 performance reviews were good, and he never felt she merited discipline. PSOF at ¶ 6. Tenorio never observed or received reports of Odisho having issues communicating with others. Tenorio Aff. at ¶ 39.

According to Tenorio, the transition period following US Bank's acquisition was difficult for the entire structured finance team due to a lack of training and "push-back" from US Bank administrators whose deals were transferred to the team. PSOF at ¶ 2. But, Tenorio and Odisho both testified that the administrator's complaints were not frequent, and that Ms. Odisho was not the subject of more complaints than her peers. *Id*. at ¶ 3. As part of his new management responsibilities, Tenorio created daily reports explaining the circumstances of each overdraft and error attributable to each analyst on the structured finance team. Tenorio Aff. at ¶ 23. Under Tenorio's supervision, Odisho consistently had fewer overdrafts and errors

than her coworkers. PSOF at ¶ 7. In early 2014, Odisho received her 2013 performance review from Tenorio. DSOF at ¶ 13. She received an overall rating of "highly effective" but only a rating of "solid performance" in "technical know-how" and "financial." *Id*. Tenorio recommended that Odisho take additional software proficiency classes. *Id*. at ¶ 14.

In August 2013, Keith Maurmeier, a Vice President at US Bank, hired David Medina as the site manager for US Bank's Chicago Global Finance Operations team. *Id*. at ¶ 12. Tenorio then began reporting directly to Medina. *Id*. at ¶¶ 12, 16. Soon after his hire, Medina asked Tenorio if he would have a problem working under Medina because Medina is younger than him. Tenorio Aff. at ¶ 15. Tenorio responded he would not. *Id*.

Tenorio testified that, between 2013 and January 2015, Medina made derogatory comments and questions to him about Odisho's religion, nationality, and race.[3] *Id*. at ¶ 35. For example, Odisho periodically attended church with Tenorio during lunch hours. DSOF at ¶ 57. Tenorio reported, in late 2013, Medina told him, "I don't know why Juliet goes with you to church. She's from the Middle East and she's Muslim." Tenorio

---

[3] Odisho testified that Tenorio told her that Medina asked numerous times where in the Middle East she was from and asked why she would be visiting Lebanon if she's from Iraq. PSOF at ¶ 32: Plaintiff Dep. 313:13–24. While this statement is inadmissible hearsay for purposes of establishing what Medina said to Tenorio, it is admissible for purposes of its effect on Odisho. *See U.S. v. Inglese,* 282 F.3d 528, 538 (7th Cir. 2002).

responded, "Not everyone from the Middle East is Muslim, she's Christian," and asked Medina "Do you realize they're persecuting Christians there?" Medina responded, "She's Christian?". PSOF at ¶ 30; Tenorio Aff. at ¶ 34. US Bank disputes Tenorio's characterization of the conversation, claiming that Medina expressed a concern to Tenorio that going to church with subordinates could give a perception of favoritism, but did not instruct Tenorio against attending church with Odisho. PSOF at ¶ 58-59. Odisho also testified she always kept a cross displayed on her desk, and she once gave Medina a rosary she brought back from vacation. *Id*. at ¶¶ 55-56.

According to Tenorio, in Spring 2014, Medina began targeting Odisho with derogatory comments and questions, micro-management, and misplaced criticism of her work performance and mistakes, and also treated Odisho more harshly than her coworkers. Tenorio Aff. at ¶¶ 28-29. For example, Medina took accounts away from Odisho and would not give her new or complicated deals. Tenorio Aff. at ¶ 45. Also, in early 2014, Medina told Odisho that she needed to improve her understanding of the structured finance software used by her group. DSOF at ¶ 15.

Odisho likewise testified that Medina singled her out by making comments to her and her coworkers about her religion and Middle Eastern background. DSOF at ¶ 65. For example, before a

team lunch, Medina suggested ordering from a Middle Eastern restaurant, commenting that Odisho would "know how that would be," which alerted her coworkers to the fact she is from the Middle East. PSOF at ¶ 31; Odisho's Dep. 314:1-13. Medina also made comments to Odisho about English being Odisho's second language on at least five occasions. DSOF at ¶¶ 61-62. Medina testified that he spoke with Odisho abut English being her second language because he wanted to assist in resolving "a communication concern." *Id.* at ¶ 64. He further testified he was empathetic to Odisho and he mentioned his background-that he speaks Spanish and his parents were immigrants from Mexico-to see if she empathized with it as well. *Id.*

Jacqueline Porter, a trust officer who worked with Odisho at US Bank, testified that, on at least two occasions, Medina asked her if Odisho had trouble understanding because English was her second language. PSOF at ¶¶ 8, 34. Porter never had any problems understanding Odisho and was not aware that anyone besides Medina had such issues. *Id.*

In April 2014, Odisho met with Medina to request vacation and Medina asked if she was Christian or Muslim. DSOF at ¶ 53. Medina also asked if she was from Lebanon; she replied that she was from Baghdad. *Id.* at ¶ 53.

US Bank contends that Odisho began to suffer performance issues by the middle of 2014: she had caused some fourteen

preventable overdrafts, totaling $11 million, and one
unpreventable overdraft. DSOF at ¶ 17. Tenorio explained that 10
of the preventable overdrafts were part of one transaction while
Odisho was covering another analyst's accounts. Tenorio Aff. at
¶ 21. Tenorio also contends that the total amount of the
overdrafts attributable to Odisho is "not relevant," and,
rather, the issue for the bank is whether more than $50 in
interest was lost due to the timing of fund transfers.[4] PSOF at ¶
17; Tenorio Aff. at ¶¶ 20-22.

In late 2014, Medina began attending and leading Tenorio's
one-on-one meetings with Odisho. PSOF at ¶ 33. At several of
these meetings, they discussed a confrontation between Plaintiff
and an account administrator, Maryann Turbak. *Id*. Medina asked
Odisho if this issue was caused by her "English as a second
language" and commented "I feel you don't understand at times."

---

[4] As context for this banking jargon, Tenorio explained most or
all "preventable overdrafts" were not true overdrafts in the
sense that a client's account was underfunded but were rather an
issue of timing a transfer prior to a disbursement which did not
cause loss to the Bank or impact on the client. Tenorio Aff. at
¶ 18. "Unpreventable overdrafts" were overdrafts not due to the
analyst. *Id*. "Errors" were also usually due to timing and
included: "not uninvesting funds until the following day, not
promptly reporting an expected large incoming wire transfer, or
running a driver to post wires." *Id*. Typically, these errors
were promptly resolved without loss. *Id*. A late fund transfer
still risked a loss of interest for the bank or client and any
overdrafts and errors that resulted in loss of more than $50
interest were counted as an incident. *Id*. at ¶ 19. US Bank
disputes Tenorio's characterization of the severity of
overdrafts and contends that preventable overdrafts were serious
incidents that required US Bank to log an incident report.

*Id.* Odisho responded that English is her primary language, and Assyrian and Iraqi are her second and third languages, respectively. *Id.* Following these meetings, Medina would often ask Tenorio if he thought Odisho understood English. *Id.* Tenorio Aff. at ¶ 60.

By the end of 2014, Odisho had committed twenty preventable overdrafts totaling over $13 million and sixteen unpreventable overdrafts totaling $3,500. DSOF at ¶ 19. But Tenorio's comments in Odisho's draft 2014 year-end performance review indicate that ten of the unpreventable overdrafts were due to one transaction earlier in the year and the sixteen unpreventable overdrafts were due the actions of US Bank administrators rather than Odisho. PSOF at ¶ 19; Tenorio Aff. at ¶ 48.

On January 30, 2015, Odisho met with Tenorio to discuss her 2014 performance review. DSOF at ¶ 20. Odisho received an overall rating of "solid performance" but received a "needs improvement" rating in the categories of "technical know-how" and "engage & develop." DSOF at ¶ 21. Tenorio testified that, after he prepared a draft 2014 performance review for Odisho, Medina instructed him to lower some of Odisho's ratings from "meets expectations" to "needs improvement" and to comment about her understanding of English, a communication-related incident with a Bank administrator, and his criticism that Odisho frequently asks questions. PSOF at ¶ 20; Tenorio Aff. at ¶ 47.

At this meeting, Tenorio told Odisho that he didn't agree with the ratings, Medina had forced him to change the ratings, and that he believed Medina did so because Medina believes Odisho is Muslim not Christian. PSOF at ¶ 21.[5] Tenorio also stated on Odisho's 2014 performance review that she needed a better understanding of structured finance software and investment processing and needed to improve her skills with that software. DSOF at ¶ 22. He wrote this because upper management at US Bank told him that every performance review must contain at least 2 goals for improvement. PSOF at ¶ 20; Tenorio Aff. at ¶ 45.

Tenorio disagreed with Medina's management style and requested to step down from his management position—he ended his supervisory duties in March 2015. PSOF at ¶ 8. Odisho reported directly to Medina from March 2015 until June 2015 when Brian Kozack was hired to replace Tenorio. DSOF at ¶¶ 23, 24. In an August 2015 meeting with Kozack and Porter, Medina told Odisho that administrators did not understand her and attributed that issue to English being Odisho's second language. DSOF ¶ 63; Odisho Dep. 193:23-195:4. Also, Odisho was the only employee in her department who was not provided with an upgraded computer in 2015, her computer was slower than her coworkers' computers, and

---

[5] The fact that Odisho heard Tenorio recount Medina's statements does not necessarily render them inadmissible hearsay. The statement is admissible for its effect on Odisho—to show why she subjectively perceived her work environment as hostile. *See Inglese,* 282 F.3d at 538.

it would often freeze up. DSOF at ¶ 70: PSOF at ¶ 27. Kozack and Medina testified they were not involved with issuing computers. DSOF at ¶ 70.

Like Tenorio before him, Kozak had regular one-on-one meetings with his direct reports, including Odisho. *Id*. at ¶ 25. At one of these meetings, Odisho told Kozack that she was looking for other opportunities, but Kozack testified that he would not recommend her for an internal position because her performance was substandard. *Id*. at ¶ 30. During such meetings in September and October 2015, Kozak addressed issues with Odisho's performance, including excessive errors and overdrafts in structured finance deals.[6] *Id*. at ¶¶ 26-27. During a December 2015 meeting, Kozack told Odisho that her performance did not meet US Bank standards. *Id*. at ¶ 29. Odisho admitted that account administrators frequently complained about her errors and mistakes. *Id*. at ¶ 31. Also, in December 2015, Kozack told Plaintiff that he and Medina "feel like you don't understand the process and we don't have faith in you working with the new accounts." PSOF at ¶ 35. Around that time, US Bank was

---

[6] Odisho disputes that she caused overdrafts in October 2015 by reference to several emails that appear to pertain to transfer and accounts details for deals in 2015. However, I cannot discern from these emails how US Bank's summary of her October 2015 overdrafts is in dispute or that these emails are admissible and will accordingly treat this fact as undisputed.

transferring deals assigned to Odisho to new hires and having her train those new hires. PSOF at ¶ 27.

In January 2016, Kozack delivered Odisho's 2015 performance review. She received an overall score of "needs improvement" and received that same score in most of the individual categories on that review. DSOF at ¶ 33. Kozack noted that Odisho's errors created risks for US bank, Odisho had 13 preventable overdrafts totaling $700,000, and she was only managing 124 accounts, despite the expectation that an analyst at her level manage 125-150 accounts. *Id*. at ¶¶ 34, 37. Odisho disputes these account management expectations, citing to Tenorio's testimony that US Banks expectation for Chicago team members was lower than 125 accounts.[7] Tenorio Aff. ¶ 8. Kozack also noted Odisho continued to struggle with structured finance software, continued to make mistakes, lacked understanding of the structured deal process, and had issues with communication in that she did not ask questions. DSOF at ¶¶ 35, 36, 38. Because of her "needs improvement" rating in 2015, Odisho was not eligible for a bonus that year. *Id*. at ¶ 40. No one else reporting to Kozack received an overall rating of "needs improvement" in 2015. *Id*. at ¶ 40.

---

[7] Odisho also disputes the overdrafts attributed to her by reference to several emails that appear to pertain to transfer and accounts details for deals in 2015. As I stated previously, I cannot discern from these emails how US Bank's characterization of these overdrafts is in dispute or that these emails are admissible and will accordingly treat this fact as undisputed.

Odisho was shocked by these low ratings and believed the Bank was trying to get rid of her. PSOF ¶ 22; Odisho Dep. 209:12-210:24. Following this meeting, Kozack told Odisho that he and Medina believed she should be looking for jobs elsewhere due to her poor performance. DSOF at ¶ 67; Odisho Dep. 199:4-200:3.

US Bank contends that Odisho continued to commit "serious errors" in January and February 2016. One error left some $13 Million uninvested, creating a financial and client-relationship risk, and caused another account to be overdrawn by $2.5 million. DSOF at ¶¶ 42-43. Odisho disputes these facts by referencing Tenorio's testimony that the timing rather than the amount of errors is what is "relevant" for the bank. In February 2016, Kozak prepared a performance improvement plan for Odisho, but it was never implemented. *Id*. at ¶¶ 44-45.

On February 16, 2016, Odisho stopped working and went on leave. *Id*. at ¶ 46. Odisho remains employed by US Bank, her position remains available to her, and she has not been terminated or replaced.[8] *Id*. at ¶ 48. However, she has not returned to active employment. *Id*. at ¶ 47. She testified that US Bank's efforts to force her out of her job, including her January 2016 performance review meeting, made her ill,

---

[8] Plaintiff claims that her return to work was conditioned on her completion of the PIP, but that is not supported by the deposition testimony she relies upon for that proposition, and consequently fails to comply with Local Rule 56.1. *See* PSOF ¶ 26.

depressed, and unable to return to active employment due to that illness, for which she continues to receive psychiatric treatment and medication. PSOF at ¶ 14; Odisho's Dep. 209:24-210:19; 211:1-7; 295:4-297:20. Odisho was approved for short-term disability, and later for long-term disability. DSOF at ¶ 47.

Odisho did not report any of discriminatory treatment to US Bank's human resources department prior to going on leave in February 2016. DSOF at ¶ 71; Odisho Dep. Tr. 235:11–16. Tenorio told Odisho that he complained to human resources about Medina's behavior at some point in between January and July 2015. PSOF at ¶ 38; Odisho Dep. Tr. 173:2–175:19. But, Tenorio never actually relayed Medina's discriminatory conduct to US Bank management or human resources. Tenorio Aff. at ¶ 65. Odisho testified that she didn't complain to human resources because others in her department—Tenorio and Hiram Thomas—told Odisho[9] they had complained to management about Medina's discriminatory conduct, and she observed that they were terminated thereafter. PSOF at ¶ 39; Plaintiff Dep. 169:13-175:19, 180-181. Kozack testified that he did not report any discriminatory or harassing conduct to

---

[9] These statements are not inadmissable hearsay to the extent they are offered for their effect on Odisho—to show why she did not make additional reports of the harassment she allegedly suffered. *See Inglese,* 282 F.3d at 538.

13

human resources either, but his reasons differed: he never witnessed such conduct. Kozack Dep. Tr. 246:2–15.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when a fair-minded jury reviewing the evidence could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). In determining whether summary judgment is appropriate, I must construe all factual disputes and draw all reasonable inferences in the non-movant's favor. *Cole v. B. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 895 (7th Cir. 2016).

## III.

Title VII prohibits employment discrimination because of an individual's national origin, race, or religion, 42 U.S.C. § 2000e–2(a)(1), and the ADEA likewise proscribes employment discrimination on the basis of a person's age, 29 U.S.C. § 623. A plaintiff may support her discrimination claims through a direct method of proof or through the indirect method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Under either method, the court looks to the evidence and

does not sort "direct" from "indirect" evidence. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Odisho argues that she has stated a claim under the direct method. To withstand summary judgment under the direct method, Odisho must present "either direct evidence of discriminatory intent (such as an admission) or enough circumstantial evidence" to permit a rational jury to infer that the plaintiff's race, national origin, religion, or other proscribed factor caused an adverse employment action." *Ortiz v. Werner Enterprises*, Inc., 834 F.3d 760, 765 (7th Cir. 2016); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011).

Odisho argues she suffered two adverse actions: a loss of her bonus for 2015 and being forced to take medical leave. The denial of a bonus "does not constitute an adverse employment action if it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary." *Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001) (citing *Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996)). Odisho's 2015 performance review left her ineligible for a bonus, but the record does not establish whether that bonus is wholly discretionary or what criteria, if any, would render Odisho automatically entitled to such a bonus. I need not decide the issue because Odisho has presented enough evidence to allow

a finding that her forced medical leave was an adverse
employment action.

Odisho argues her forced medical leave is akin to a
constructive discharge, which US Bank disputes. As Odisho is
still employed by US Bank, and may return to her position, she
does not fit into the framework for constructive discharge. *See
Equal Employment Opportunity Comm'n v. Costco Wholesale Corp.*,
903 F.3d 618, 628 (7th Cir. 2018) ("We have said that we can
make it no plainer than to reiterate that constructive discharge
refers to a situation in which the employee is not fired but
quits.")(internal quotation and citation omitted).

Even if Odisho's medical leave is not a constructive
discharge, it can still constitute an adverse action. In
*Townsend v. Indiana Univ.*, 995 F.2d 691, 692 (7th Cir. 1993),
the plaintiff was diagnosed with having post-traumatic stress
disorder induced by sexual assaults she suffered in her
workplace, which caused her to take an ongoing medical leave of
absence. *Id*. She remained an employee of the university and
could return to her job. *Id*. The court explained that
"involuntary termination, whether in the form of outright
discharge or of constructive discharge," is not a sine qua non
to prevailing under Title VII, rather the "question is whether
the discrimination inflicted the kind of harm for which Title
VII offers redress." *Id*. at 693. The court concluded that "if

the assaults caused severe psychological distress that in turn caused her to lose work" then she was entitled to pursue lost wages. *Id.*

Odisho has presented enough evidence to allow a jury to conclude that her medical leave was caused by US Bank's actions. Odisho's former supervisor, Tenorio, felt that Medina was singling her out for criticism on her job performance. Medina intervened to downgrade Odisho's 2014 year-end performance review. Medina and Kozack were transferring Odisho's deals to other employees and not assigning her new deals. When she mentioned looking for a new role, Kozack told her that he would not recommend her for other positions in the bank. And, following her November 2015 review, which contained similar low marks and comments to those Medina added to her 2014 review, she was told by Kozack that he and Medina believed she needed to look for a job elsewhere. Odisho testified that her medical leave, need for psychiatric care, and attendant inability to work were caused by these attempts to force her out of her job. It is undisputed Odisho went on disability shortly after leaving the bank. This evidence could allow a jury to reasonably infer Odisho's medical leave was an adverse employment action.

I turn next to the question of whether Odisho has offered enough evidence to permit a reasonable inference that her race, national origin, religion, or age caused her forced medical

leave. Odisho has not presented any direct evidence, that is, "something close to an explicit admission by the employer that a particular decision was motivated by discrimination." *Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). Instead, she offers circumstantial evidence related to Medina's comments on her English language ability, communication skills, and Middle Eastern background. To avoid summary judgment, circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Burnell,* 647 F.3d at 708. It can include: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment and (3) evidence where the employee was qualified for and fails to receive the desired treatment, and the employer's stated reason for the difference is unworthy of belief." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007).

Odisho has presented sufficient evidence to support her claim for national origin discrimination. Medina made comments to Odisho about her national origin. He singled her out by making unprompted comments to her and her coworkers about her Middle Eastern background. Tenorio testified that Medina

believed Odisho was Muslim because she was from the Middle East
and asked why she went to church with Tenorio. These comments
are not facially disparaging or discriminatory. They could be
read as innocuous, but a reasonable juror could find they
evidence Medina harbored prejudice against Odisho's Middle
Eastern background. *See Kasten v. Saint-Gobain Performance
Plastics Corp.,* 703 F.3d 966, 974 (7th Cir. 2012) (noting
whether ambiguous statements are discriminatory or benign "is an
appropriate question for a jury").

"It is true that language ability per se is not the legal
equivalent to a protected class like race or national origin,
but language can sometimes serve as a proxy, or stalking horse,
for discrimination against a protected class." *E.E.O.C. v.
Wisconsin Plastics, Inc.*, 186 F. Supp. 3d 945, 948 (E.D. Wis.
2016). Though not facially discriminatory, Medina's repeated
comments about Odisho's ability to communicate in and understand
English can raise a reasonable inference that Medina's actions
were made with animus to her Middle Eastern origin. Odisho has
offered evidence that Medina repeatedly initiated discussions
with Odisho, and her coworkers related to his perception that
English was her second language. Medina would often ask Tenorio
if he thought Odisho understood English. Medina criticized
Odisho's communication skills and blamed workplace disagreements
on that perceived deficiency. While ambiguous, references to

Odisho's "'communication issues' could also be reasonably construed as 'code' for national origin." *Artunduaga v. Univ. of Chicago Med. Ctr.*, No. 12 C 8733, 2015 WL 3857333, at *8 (N.D. Ill. June 19, 2015) (quotations in original); *see also Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1050 (7th Cir. 2000) (A remark about plaintiff's accent supported an inference of discriminatory intent "because accent is generally recognized as a manifestation of national origin and the comment was uttered by the decision maker in this case.")

Odisho has also offered evidence that US Bank's stated reason for treating her differently from her coworkers is not credible. US Bank claims that Odisho's poor performance, including errors on deals and her communication issues, justified the treatment that culminated in her medical leave. However, Tenorio's testimony suggests that the record of Odisho's poor performance was due in part to Medina singling Odisho out for criticism, Medina misattributing workplace problems to Odisho's communication ability, and US Bank misinterpreting the errors and overdrafts she allegedly committed. And, Odisho's alleged poor performance and communication problems coincide with Medina's arrival at US Bank. Both Tenorio and Jones testified that they never encountered communication issues with Odisho in their many years of working with her, which overlapped with Medina's tenure on

the structured finance team. Also, Odisho's last performance
review noted that she was not handling as many accounts as would
be expected of her position, but US Bank transferred accounts
away from her and refused to give her new accounts. Either way,
I cannot reconcile the evidence on Odisho's performance at this
stage. *See Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 530 (7th
Cir. 2008), *as corrected* (Jan. 21, 2009) (resolving inconsistent
evidence of employee performance is a question for the jury);
s*ee also Artunduaga*, 2015 WL 3857333, at *8 ("There is no doubt
that clear communication is an essential part of a surgical
resident's job, but whether Plaintiff's accent undermined her
job performance is a question of fact for a jury.").

Looking at this assembled circumstantial evidence—a stream
of ambiguous remarks about Odisho's background and English
language ability plus evidence that undercuts US Bank's reason
for its treatment of Odisho—a reasonable jury could infer that
US Bank's conduct, which culminated in Odisho's medical leave,
was carried out with the intent to discriminate against Odisho
because of her national origin.

Odisho's race-based and religion-based discrimination
claims may proceed for the same reasons. Race and national
origin are often closely interrelated. *See, e.g., Hussein v.
Oshkosh Motor Truck Co.,* 816 F.2d 348, 352 (7th Cir. 1987)
(national origin discrimination may constitute a complaint on

the basis of race, under 42 U.S.C. § 1981, when "it is clear that the plaintiff is alleging that he belongs to a group that is distinct from white citizens as a matter of race or color."). Odisho has stated her race is white, Asian, and Iraqi. While Odisho testified that neither Medina nor anyone else at US Bank made comments based on her race, the language-based circumstantial evidence she has offered could allow a reasonable jury to find Medina's conduct was racially motivated as well. *See Zayadeen v. Abbott Molecular*, Inc., No. 10 C 4621, 2013 WL 361726, at *9 (N.D. Ill. Jan. 30, 2013) ("An individual's language may be a defining characteristic of his ancestry and therefore of his race . . . . This is true for Arabs and the Arabic language."). Similarly, Medina's comments assuming Odisho was Muslim because she was from the Middle East and his questioning of Odisho's religion when she requested vacation to visit Lebanon could fairly raise an inference that his perception of her religion is intertwined with her national origin and race.

The same cannot be said for Odisho's discrimination claim premised on age. She admitted neither Medina nor anyone else ever made comments about her age. DSOF at ¶ 50. The only evidence Odisho has offered to support her claim of age discrimination is that US Bank hired individuals under age 40 and Medina asked Tenorio if there would be any issue with their

age difference. DSOF at ¶ 49; Tenorio Aff. at ¶ 15. That does not raise a reasonable inference that any actions by US Bank were motivated by Odisho's age.

## II.

Harassment is actionable under Title VII as a hostile work environment claim. *Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 895 (7th Cir. 2016) (citations omitted). The Seventh Circuit "has assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA." *Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir. 2005) (citations omitted). I will likewise assume, for the purposes of this motion, that such a claim is cognizable.

To survive summary judgment on her harassment claims, Odisho first must "produce evidence that the alleged harassment was severe or pervasive" enough to render her workplace both objectively and subjectively hostile. *Hall v. City of Chicago,* 713 F.3d 325, 330 (7th Cir. 2013). "Second, [Odisho] must show that the hostile conditions were because of" her membership in a protected class. *Id.* Third, "there must be a basis for employer liability." *Id.* Whether conduct is severe or pervasive enough to alter the terms and conditions of a plaintiff's employment depends on "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it

unreasonably interferes with an employee's work performance."[10]
*Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017)
(quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir.
2009)). This inquiry looks at all the circumstances of
harassment together; a court should not "carve up the incidents
of harassment and then separately analyze each incident, by
itself, to see if each rises to the level of being severe or
pervasive." *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036,
1045 (7th Cir. 2000).

US Bank argues that Odisho has failed to put forth evidence
that the harassment she alleged was sufficiently severe or
pervasive enough to constitute a hostile work environment,
Odisho's claims are untimely, and she failed to report her
claims for harassment to US Bank's management or human resources
department. None of these arguments are convincing.

---

[10] US Bank argues that Odisho faces a high threshold for proof as
"the workplace that is actionable is one that is hellish."
*Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 645 (7th Cir.
2005) (quoting *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010,
1013 (7th Cir. 1997)). This statement ignores the Seventh
Circuit's long-standing direction that "hellishness" is not the
standard for a hostile work environment claim*. Jackson v. Cty.
of Racine*, 474 F.3d 493, 500 (7th Cir. 2007) ("We trust that in
the future counsel will avoid the use of a single, overwrought
word like 'hellish' to describe the workplace and focus on the
question whether a protected group is experiencing abuse in the
workplace, on account of their protected characteristic, to the
detriment of their job performance or advancement."); *see also
Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017).

Odisho has presented enough evidence to allow a jury to reasonably conclude that her workplace was objectively and subjectively hostile. She relies on much of the same evidence put forth to support her discrimination claims: Medina's conduct beginning in 2013 and culminating in her 2016 forced medical leave. Medina's facially-neutral, ambiguous comments placed a focus on Odisho's Middle Eastern origin, her race, and his perception of her religion. These comments could allow a jury to conclude Medina's other statements and actions were motivated by discriminatory animus. *See Hall*, 713 F.3d at 334 (A supervisor's reference to plaintiff as "that woman" was an "ambiguous, context-dependent comment [that] could be viewed as evidencing gender animus, which in turn permits a jury to conclude that gender played a part in all of [the supervisor's] actions."); *cf. Darbha v. Capgemini Am. Inc.*, 492 F. App'x 644, 647 (7th Cir. 2012) (negative performance review did not raise a fact issue as to the existence of a hostile work environment where plaintiff offered no evidence to substantiate his allegations that he received that review because of his membership in a protected class).

Odisho's testimony that US Bank's conduct caused her to take a forced medical leave and undergo psychiatric treatment[11] is evidence of the severity of the harassment she suffered. *See Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 647 (7th Cir. 2011) ("To qualify as a hostile work environment, the conduct at issue must be severe or pervasive enough to cause psychological injury, although Title VII comes into play before the harassing conduct leads to a nervous breakdown.") (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22 (1993)). This evidence shows Odisho subjectively considered her workplace to be hostile. *See Gentry v. Export Packaging Co.,* 238 F.3d 842, 851 (7th Cir. 2001) (holding it was reasonable for the jury to find a hostile work environment where, *inter alia*, the plaintiff "was treated for anxiety and depression" due to her supervisor's alleged harassment). And, when considered in the context of Odisho's testimony that she has had difficult bosses in the past and fled religious persecution in Iraq, her illness could fairly raise an inference that her workplace was objectively hostile as well. Similarly, a jury could reasonably conclude that Medina's repeated comments about Odisho's Middle Eastern origin and English proficiency were humiliating in the context of her workplace.

---

[11] In her briefing, Odisho claims she has suffered post-traumatic stress disorder from US Bank's conduct, but that diagnosis is not found in the record provided. Dkt. No. 112 at 7.

Odisho has also provided evidence that indicates many of her negative performance reviews were due to Medina's discriminatory intent. Tenorio's testimony undercuts US Bank's position that Odisho's communication ability and overdrafts created genuine workplace problems. Likewise, Medina's intervention in Odisho's 2014 performance review and Kozack's comment, following Odisho's 2015 review, that he and Medina felt Odisho should pursue work elsewhere can fairly raise an inference that Odisho's 2015 review was one of Medina's attempts to push her out. A jury could similarly infer that Medina's conduct unreasonably interfered with Odisho's ability to perform her job and contributed to her poor performance.

I cannot say Odisho's harassment claims are untimely as a matter of law. Odisho filed her claim with the Equal Employment Opportunity Commission on June 29, 2016. Thus, only conduct that occurred after September 3, 2015 falls within the 300-day statute of limitations. *See* 42 U.S.C. § 2000e-5(e)(1); *Speer v. Rand McNally & Co.,* 123 F.3d 658, 662 & n. 1 (7th Cir. 1997). But, as a hostile work environment claim inherently involves repeated conduct, the applicable statute of limitations does not bar the consideration of conduct that occurred outside the limitation period so long as it forms a single unlawful employment practice that reaches into the statutory period. *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017)

(citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Pruitt v. City of Chicago*, 472 F.3d 925, 928 (7th Cir. 2006)). To avail herself of this "continuing violation" doctrine, Odisho must show that she sued "as soon as it was reasonable for [her] to conclude that [her] supervisor's harassment had created an intolerable working environment, or, in other words, as soon as the harassment [became] sufficiently palpable that a reasonable person would realize [she] had a substantial claim under Title VII." *Shanoff v. Illinois Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001) (citations and quotation omitted).

On the record provided, the last comment Medina made about Odisho's English ability was in August 2015. But, much of Medina's conduct was ambiguous and would not have been readily apparent as an actionable harassment claim under Title VII. *Cf. Dasgupta v. Univ. of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139–40 (7th Cir. 1997) (plaintiff could not avail himself of the continuing violation doctrine where his delay in filing suit "cannot be ascribed to the ambiguous or incomplete nature of the discrimination"). Here, in January 2016, Odisho received her 2015 performance review which echoed Medina's earlier criticisms of her communication and work performance. Kozack then told her that he and Medina felt she should pursue work elsewhere. Odisho testified that these events precipitated her illness and medical

leave. Odisho heavily relies on this illness to establish the severity of the harassment she now sues for. Viewing the evidence in the light most favorable to Odisho, she has raised an issue of fact regarding her reasonableness in not filing her claim until June 2016. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) (citation and quotation omitted) (The "continuing violation doctrine" is applicable where "earlier discrimination may only be recognized as actionable in light of events that occurred later, within the period of the statute of limitations.").

US Bank also argues that Odisho's failure to report harassment to bank management or human resources prior to going on leave is fatal to her hostile work environment claims. In support of this argument, US Bank cites to several cases where a plaintiff unreasonably failed to utilize a defendant's policies for reporting harassment: *Durkin v. City of Chicago*, 341 F.3d 606, 612 (7th Cir. 2003); *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 811 (7th Cir. 1999); *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1037 (7th Cir. 1998).[12] For her part, Odisho

---

[12] From US Bank's briefing and the authorities it cites, it is not clear whether it is advancing the affirmative defense to strict liability provided in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998), or is arguing that Odisho must prove US Bank was negligent in discovering or remedying her alleged harassment, which requires a showing of adequate notice. Under either framework, the absence of evidence on US Bank's anti-

did inform Tenorio, her immediate supervisor, about this
harassment and Tenorio told her that he complained to human
resources about Medina's behavior at some point in between
January and July 2015. She also testified that she feared
complaining about Medina because some of her coworkers told her
they had complained about his discriminatory conduct and were
later terminated. While Tenorio failed to ultimately report this
harassment, I cannot say, as a matter of law, Odisho
unreasonably failed to avail herself of US Bank's harassment
policies or guidelines because the parties' Local Rule 56.1
statements and briefing provide no indication of what those
policies or guidelines are, or what they require of an employee.
As such, I cannot say whether Odisho acted unreasonably in
relying on Tenorio to escalate problems with Medina's conduct
and declining to make a report herself due to fears of
retaliation. *See Burnell v. Gates Rubber Co.*, 647 F.3d 704, 709
(7th Cir. 2011) (at the summary judgment stage, the court must
resolve any ambiguity in the non-movant's favor).

Odisho's harassment claim premised on age fails for the
same reasons as her age discrimination claim. As stated
previously, Odisho has not offered evidence suggesting that
Medina's conduct was due to her age nor does the fact that US

---

harassment policies prevents me from finding Odisho failed to
adequately inform US Bank.

Bank hired individuals younger than age 40 raise such an inference.

IV.

For the reasons stated above, US Bank's motion is denied with respect to Odisho's claims for discrimination and harassment based on national origin, race, and religion and granted with respect to her other claims.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: July 24, 2019